Plaintiff-appellant brought this action for declaratory judgment, asking the court to construe a contract between the plaintiff and defendants. Specifically, the plaintiff sought a declaration that, by paragraph 6 (c) of the contract, Engineers of the South, Inc. agreed only to indemnify the defendants, J.W. Goodwin and the Goodwin companies, to the extent of work performed by Engineers of the South, Inc. and did not obligate it to indemnify J.W. Goodwin and the Goodwin companies for work theretofore performed by Goodwin and the Goodwin companies.
The defendants denied the material allegations of the complaint, asserted a defense of estoppel, and also filed a counterclaim seeking to have the plaintiff provide insurance to indemnify Goodwin and the Goodwin companies against loss occasioned by work performed by Goodwin and the Goodwin companies. The defendants also demanded a jury trial. The court denied the *Page 674 
plaintiff's motion to strike the jury demand and the case proceeded to trial to a jury. It rendered a verdict in favor of the defendants; and, from the judgment entered thereon, the plaintiff appealed.
Two issues are presented for review. First, the appellant argues that reversal is required because the trial court excused one of the jurors after trial had begun. The facts surrounding this issue are as follows:
After the jury had been struck and empaneled, opening statements were made by counsel for both sides. The next morning one of the jurors, Mrs. Kathryn Mabee, advised the trial judge that, during opening statements the day before, she recognized the name of a Mr. Lemley who had signed the contract, the subject of the suit. The trial judge related in chambers to the attorneys that Mrs. Mabee had informed him that she was acquainted with a Mr. Lemley, that he was a neighbor of hers and was a retired engineer. She said, however, that it would not matter to her one way or another if this person was the same Mr. Lemley as the one involved in this litigation. (It was then stipulated that they are one and the same.) Following this, counsel for the defendants moved to have Mrs. Mabee excused as a juror and allow the case to continue with eleven jurors based upon an agreement between the parties and the court which was entered into before the commencement of the trial. The plaintiff's counsel objected to this motion saying:
 ". . . I do not agree that it would be appropriate and do not consent to the continuation of the trial or having a mistrial. . . ."
The trial court then granted the defendants' motion and excused the juror, expressly noting that:
 ". . . I would not ordinarily do it, I would state that for the record, except for the agreement of proceeding with 11 in the event of incapacity of any of the jurors. This may not, does not probably fall in the category of sickness or incapacity, but to attempt to do complete justice to all parties and in view of the agreement before hand I would excuse her."
The appellant concedes that the parties and the court had a prior agreement to proceed with less than twelve jurors but argues that Mrs. Mabee was improperly excused under the terms of that agreement. It asserts that the agreement contemplated that only sickness or incapacity of a juror would justify excusing him or her under the agreement. Counsel for appellees stated on the record that the agreement contemplated ". . . that if for some reason a juror was recused prior to the commencement of deliberations that we had agreed to go along with 11."
The trial judge observed that Mrs. Mabee's acquaintance with a party to the litigation probably did not fall into the category of sickness or incapacity but nevertheless excused her "in view of the agreement." The appellant argues that this was an erroneous interpretation of the agreement by the trial judge and urges us to reverse. However, the agreement is not in the record. There are references to it by the court and by counsel for both sides as discussed in chambers leading up to the discharging of the juror. But, nothing in the record shows what the terms of the agreement were. The trial judge obviously concluded that it permitted him to excuse this juror under its terms. He interpreted it to provide that the parties had agreed to continue the trial with eleven jurors under the circumstances presented here. We cannot say, as a matter of law, that it did not; and, because it is not a part of the record, we cannot say that he erroneously interpreted it under these facts.
It is true, as the appellant contends, that a jury trial contemplates a jury of twelve persons. Gilbreath v. Wallace,292 Ala. 267, 292 So.2d 651 (1974). However, Rule 48, ARCP, permits the parties to consent to a jury of less than twelve.
Although we agree with the appellant that Mrs. Mabee's acquaintance with Mr. Lemley was not sufficient to incapacitate her as a juror, we cannot speculate that the agreement to proceed with eleven was so restricted. The trial court concluded *Page 675 
that the agreement to proceed with less than twelve jurors encompassed the situation presented here. The parties were certainly free under ARCP 48 to so stipulate. We cannot reverse in the absence of a record which shows that this was error.
The appellant finally argues that the trial court erred in denying its motion to strike the jury demand. In support of this argument, it cites a number of cases which hold that a party to an action for declaratory judgment is entitled to a trial by jury only where an issue of fact exists. AlabamaElectric Cooperative v. City of Luverne, 282 Ala. 616,213 So.2d 676 (1968); Major v. Standard Accident Ins. Co., 272 Ala. 22, 128 So.2d 105 (1961); Reed v. Hill, 262 Ala. 662,80 So.2d 728 (1955). We agree with this proposition of law and continue to follow it. However, the issue here is whether the contract under which a declaratory judgment was sought was so clear and unambiguous as to require its construction by the trial court, as a matter of law, or whether, on the other hand, it was so unclear and ambiguous that a question of fact going to the parties' intent was presented. We hold that, in the instant case, a fact question was presented.
The evidence shows the following factual background against which the agreement was drawn. Mr. J.W. Goodwin formed J.W. Goodwin Engineering Company to do municipal engineering work in the 1930's. The business prospered and he hired several engineers (the signators to the contract at issue). Over the years, Mr. Goodwin formed several Goodwin companies, all involved in municipal contract engineering. In the 1950's he allowed the employee engineers to buy stock in the company. Mr. Goodwin was President and Chairman of the Board of the various Goodwin companies.
In 1963, all of the business of the Goodwin companies was being done under the corporate name of Goodwin Engineers of the South, Inc. In that year, Mr. Goodwin decided to retire and sell the business to the other engineers who had been with the companies for fifteen years. This decision resulted in the agreement involved here. After setting up a procedure whereby all of the stock could be acquired by the employees, the agreement provided in pertinent part:
 "6. The Corporation and individual stockholders agree that the trade name of `Goodwin Engineers of the South, Inc.' belongs exclusively to J.W. Goodwin and said trade name has been used by said company since its incorporation, with his consent, which was set forth in a previous stockholders agreement dated the 31st day of October, 1957 and during the time that said J.W. Goodwin was an officer and stockholder of said company. J.W. Goodwin now is leaving the employment of said company as an officer and stockholder and he has agreed to the use of the trade name `Goodwin Engineers of the South, Inc.' by the Corporation, only subject to the following terms and conditions.
". . .
 "(c) The parties hereto will at all times carry public liability and property damage insurance, comprehensive professional, products liability, errors and omissions and such other insurance which they will extend to cover J.W. Goodwin, individually, Goodwin Enterprises, Inc. (formerly Goodwin Engineers, Inc.) J.W. Goodwin Investments, Inc. (formerly J.W. Goodwin Engineering Co., Inc.) J.W. Goodwin Engineering Company, a partnership and shall furnish an endorsement of each policy and any renewal thereof to J.W. Goodwin and shall at all times, indemnify and save harmless J.W. Goodwin and the other parties mentioned above against all liability, claims of liability, loss, cost or damage, including death and loss of services on account of any injury to any person or property occurring from any cause whatsoever in connection with any work performed or heretofore performed by the parties hereto and will at all times and at their expense defend, on behalf of J.W. Goodwin, Goodwin Enterprises and J.W. Goodwin Investments, Inc. and J.W. Goodwin Engineering Company, a *Page 676 
partnership, either or all of them, any suit brought against them or any of them arising from such cause and will pay all legal expense and costs in connection therewith."
The agreement was executed in August of 1963. Thereafter, until July 1, 1975, the indemnitors indemnified Mr. Goodwin and the old Goodwin companies for work performed by Goodwin and the old Goodwin companies. From the date of the agreement, Goodwin Engineers of the South, Inc. (now Engineers of the South, Inc.) paid for insurance naming Mr. Goodwin and all the old Goodwin companies as named insureds and provided insurance protection for Mr. Goodwin and the old Goodwin companies for work performed by Mr. Goodwin and the old companies. During these years, several lawsuits were filed against J.W. Goodwin Engineering Company and other old Goodwin companies. In each instance, these lawsuits were defended under insurance policies provided by Engineers of the South, Inc.
The language of ¶ 6 of the agreement is susceptible of two interpretations — that urged by the plaintiff and that urged by defendants. This being the case, a fact question was presented as to what the parties intended. To decide that issue, evidence of pre-contract negotiations, the conduct of the parties and conditions existing at the time of the agreement are relevant. C.F. Halstead Contractor, Inc. v. Dirt,Inc., 294 Ala. 644, 340 So.2d 657 (1975). The trial court allowed both sides to present evidence of this kind and the jury decided the issue in favor of the defendants. Finding no error in the submission of the issue to the jury, we affirm the judgment.
AFFIRMED.
MADDOX, ALMON, EMBRY and BEATTY, JJ., concur.